UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS LINKMEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:13-cv-1144-WTL-DML |
| | ) |
| M.S.D. LAWRENCE TOWNSHIP | ) |
| SCHOOL CORP., et al., | ) |
| | ) |
| Defendants. | ) |

### ENTRY ON SCHOOL DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on the Motion to Dismiss (Dkt. 18) filed by Defendants M.S.D. Lawrence Township School Corporation, Denna Renbarger, Concetta Raimondi, and Sharon Smith (collectively "the School Defendants"). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I.   STANDARD

The School Defendants move to dismiss Counts I and II of Linkmeyer's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (omission in original)). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334 (citations omitted). A complaint's

factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## II.  FACTUAL BACKGROUND

The facts as alleged in Linkmeyer's Complaint are as follow.

Linkmeyer began work as principal of Crestview Elementary School in Lawrence Township in June of 2008 and, for the duration of his tenure there, satisfied all expectations of his position. While Linkmeyer was principal, Defendant Salupo was a registered nurse employed by Defendant Community Health Network ("Community") and stationed at Crestview.

On September 14, 2011 Salupo, Crestview teacher Faye Duffey, and Crestview secretary Kim Wiggins "made defamatory accusations against Linkmeyer which find no basis in fact." Complaint at ¶ 38. Specifically, Salupo told certain School Corporation officials "that Linkmeyer was bi-polar, Linkmeyer had 'real psychological problems,' and Salupo represented that she had to rescue many [kids] from Linkmeyer's office because she feared for their safety and well-being." *Id.* at ¶ 39. The School Corporation placed Linkmeyer on administrative leave so it could investigate Salupo's allegations.

The School Corporation's investigation ultimately showed that Salupo's allegations were baseless and that she had fabricated them in hopes that the School Corporation would fire Linkmeyer. In response, the School Corporation had Salupo removed from her post at Crestview. On September 19, the School Corporation also "issued a written disciplinary action against Linkmeyer for allegedly failing to discern between trustworthy and untrustworthy individuals." *Id.* at ¶ 44.

On October 21, 2011, Linkmeyer sent an e-mail to Defendants Renbarger, the School Corporation's Director of Elementary Education, and Smith, its Director of Human Resources in

which he "threaten[ed] to institute civil litigation against Salupo, Duffey, and Wiggins" and asked the School Corporation to produce "all documents relevant to the investigation into Salupo's allegations." *Id.* at ¶ 45. Four days later, at the request of the School Corporation, Linkmeyer met with Defendant Raimondi, the School Corporation's Superintendent, to further discuss his plan to sue Salupo, Duffey, and Wiggins. Raimondi attempted to dissuade Linkmeyer from filing a lawsuit.

On December 5, 2011, Linkmeyer continued to prepare for litigation by speaking with Mary Browning, Community's Nursing Director. They discussed Salupo's allegations and the relationship between Community and the School Corporation. In January of 2012, after being referred by Browning, Linkmeyer met with John Fohrer, Community's attorney. Linkmeyer believes that Raimondi, Renbarger, and Smith learned that he discussed potential litigation with Browning and Fohrer.

On January 12, 2012, the School Corporation transferred Linkmeyer to Amy Beverland Elementary School and demoted him to the position of associate principal. Despite being rated as at or above average in all categories in a December 2012 performance evaluation, Linkmeyer was notified on March 7, 2013, that he would be demoted to the position of assistant to the principal for the 2013–2014 school year and his annual salary would be reduced by $20,000. Linkmeyer alleges that some combination of Raimondi, Renbarger, and Smith was responsible for both decisions to demote Linkmeyer and that they demoted him in retaliation against his e-mail to Renbarger and Smith, his meeting with Raimondi, his conversations with Browning or Fohrer, or some combination thereof.

### III. DISCUSSION

In Count I of his Complaint, Linkmeyer alleges that the School Defendants' retaliatory demotion impermissibly violated his free speech rights as protected by the First Amendment. In Count II, Linkmeyer alleges that the demotion violated his First Amendment right to petition the government for a redress of grievances. For the reasons set forth below, the Court finds that Linkmeyer has not pled facts sufficient to support a plausible conclusion that either the Free Speech Clause or the Petitions Clause protected any of his communications.

### A. Free Speech Clause

According to Linkmeyer, the First Amendment's Free Speech Clause protected his e-mail to Renbarger and Smith and his conversations with Raimondi, Browning, and Fohrer. By demoting him for that speech, then, the School Defendants violated his First Amendment rights, and he is entitled to relief under 42 U.S.C. § 1983. The School Defendants argue that Linkmeyer's communications, as described in the Complaint, were not subject to constitutional protection because they did not address a matter of public concern as required by the First Amendment. The Court agrees: Linkmeyer's Complaint does not contain factual allegations that would show his speech addressed a matter of public concern, and he therefore has failed to state a plausible claim for relief in Count I.

#### *1. Only communications designed to draw attention to matters of public concern are protected by the Free Speech Clause.*

The First Amendment only protects speech that addresses matters of public concern. *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 973 (7th Cir. 2000) (citing *Connick v. Meyers*, 461 U.S. 138, 146 (1983)). Whether speech addresses a matter of public concern is a question of law for the Court to decide. *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir.

2010).  Where, as here, a plaintiff places multiple pieces of speech in issue, the Court must consider the public nature of each one.  *Kuchenreuther,* 221 F.3d at 973.

Construed broadly, "matters of public concern" include anything "that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."  *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004).  This would include "'any matter of political, social, or other concern to the community.'"  *Kuchenreuther*, 221 F.3d at 973.  However, speech does not address a "matter of public concern" for First Amendment purposes simply because it touches on an issue the public generally finds interesting.  *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 586 (7th Cir. 1992).  For example, in *Gross*, the Seventh Circuit acknowledged that sexual harassment of public employees is a matter of widespread interest, but nonetheless held that a public employee's articulation of a personal grievance about sexual harassment was not protected by the First Amendment.  *See* 619 F.3d at 706.  Likewise, in *Kuchenreuther*, the Court of Appeals found that police operations and public safety are matters of public concern but held that a police officer's objections to a policy allowing officers to carry only one set of handcuffs did not trigger constitutional protection.  *See* 221 F.3d at 974–75.  And, in *Colburn*, the court held that, although "[n]o doubt the public would be displeased to learn that faculty members at a public university were evaluating their colleagues based on personal biases," two professors' requests for external review of a faculty evaluation protocol were not encompassed by the First Amendment.  *See* 973 F.2d at 586.

The First Amendment affords no protection to speech that amounts strictly to a private airing of an individual employment grievance.  *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996.)  Citing the Supreme Court's opinion in *Connick*, the Seventh Circuit has explained that

the "central purpose" of the First Amendment is to protect "the public marketplace in ideas and opinions" and that privately aired employment grievances contribute nothing to that market. *Id.* (internal quotations omitted). This is not to say that personnel grievances and private statements never receive First Amendment protection. *Id.*; *see also Colburn*, 973 F.2d at 587, 588. However, the Seventh Circuit has made clear that speech does not address a matter of public concern unless it demonstrates some intent to draw public attention to a public issue. *Campbell*, 99 F.3d at 827; *see also Colburn*, 973 F.2d at 587. By contrast, the First Amendment offers no protection to speech the sole purpose of which is to bolster the plaintiff's position in a private personnel dispute—even if the speech relates in some manner to a matter of general societal interest. *Campbell*, 99 F.3d at 827; *see also Colburn*, 973 F.2d at 587, 588.

> ### 2. *Linkmeyer's Complaint does not assert any facts that, if true, would state a plausible claim that his speech addressed a matter of public concern.*

Linkmeyer's Complaint asserts no facts that, if proven true, would articulate a plausible claim that his speech was protected by the First Amendment's Free Speech Clause. It reveals no effort by Linkmeyer to draw attention to any public issue. Instead, the Complaint portrays Linkmeyer's communications as nothing more than attempts to gather information for a lawsuit arising out of a private personnel dispute, and such communications fall beyond the scope of the First Amendment.

> #### a. *As alleged in the Complaint, Linkmeyer's speech addressed only his prospective litigation.*

Linkmeyer's Complaint identifies only four instances in which he spoke, and those four instances represent the sole basis for his First Amendment claims:

> 45. On or about October 21, 2011, Linkmeyer sent an e-mail to Renbarger and Smith threatening to institute civil litigation against Salupo, Duffey, and Wiggins, and requesting all documents relevant to the investigation into Salupo's allegations.

> 46.  On or about October 25, 2011, per the School's request, Linkmeyer met with Raimondi and discussed Linkmeyer's stated intention of using the courts to redress his grievances against Salupo, Duffey, and Wiggins.
>
> . . .
>
> 48.  On or about December 5, 2011, Linkmeyer spoke with Mary Browning, Nursing Director for Community, about Salupo's false allegations, her false medical diagnosis, and defamatory allegations.  Linkmeyer and Browning discussed the relationship between Community and the School, and Browning referred Community's legal counsel to Linkmeyer.
>
> 49.  In or around January of 2012, Linkmeyer spoke with John Fohrer, legal counsel for Community, about Salupo's defamatory allegations.  Fohrer told Linkmeyer, among other things, that since Linkmeyer suffered no monetary damages, there was nothing Community could do about the situation.

Complaint at ¶¶ 45, 46, 48, 49.

Linkmeyer's own descriptions make clear that each of the four communications spoke exclusively to—and was motivated entirely by—his interest in litigating relief from Salupo's allegations.  By Linkmeyer's account, his e-mail to Renbarger and Smith and his conversations with Raimondi and Fohrer were entirely about prospective litigation.  Linkmeyer describes his discussion with Browning as addressing Salupo's underlying accusations, but his inquiry about the relationship between Community and the School and Browning's referral of Linkmeyer to Fohrer suggest that this conversation's purpose was to prepare for litigation.  *See id.* at ¶¶ 48–50 ("Upon information and belief, Renbarger, Raimondi, and Smith were aware that Linkmeyer spoke with Community representatives *about pursuing litigation against Salupo and/or Community*") (emphasis added).

Accordingly, Linkmeyer could have spoken on a matter of public concern only if his prospective lawsuit (or the personnel decisions and accusations precipitating it) was a matter of public concern.  Linkmeyer has not alleged any facts that would support such a conclusion.  He has not asserted that anyone but the parties to this lawsuit cared about Salupo's accusations or

7

the School Defendants' response. He has not asserted that Salupo's allegations or the subsequent personnel decisions became subjects of discussion or debate within Crestview Elementary, much less the broader community. To the contrary, Linkmeyer alleges only that Salupo's allegations were unfounded, that the personnel actions that followed therefore were unwarranted, and that he communicated his intent to seek a remedy through litigation. These facts simply do not entitle Linkmeyer's speech to constitutional protection.

Linkmeyer's description of his audience—although not dispositive—also undermines his argument that he spoke on a matter of public concern. Three of the four incidents Linkmeyer has raised were one-on-one conversations, and the fourth was an e-mail he sent to two people. Speech is not unprotected solely because it is private, *e.g.*, *Campbell*, 99 F.3d at 827, and a statement's content is more indicative of its First Amendment status than its form or context, *e.g. Gross,* 697 F.3d at 704. Here, though, content, form, and context compel the same conclusion: The speech Linkmeyer has brought to court was not designed to draw attention to any public issue. Rather, Linkmeyer's description of the communications as addressing only his attempt to resolve a personnel dispute through litigation and as being addressed only to people involved in that dispute preclude any conclusion that Linkmeyer was speaking on a matter of public concern as defined by the First Amendment.

### b. *The Complaint alleges no facts that would show Linkmeyer spoke about school safety.*

Linkmeyer suggests that his speech was constitutionally protected because it addressed school safety. School safety may well be a matter of public concern. *See Gschwind v. Heiden*, 692 F.3d 844, 846 (7th Cir. 2012) ("Violence in schools is a subject in which the public these days is highly interested"). Even so, Linkmeyer's Complaint does not indicate that he ever spoke about school safety.

Of course, the Complaint asserts that Salupo raised the issue of school safety when she claimed she had to "rescue" students from Linkmeyer's office for fear of their safety and well-being. But Linkmeyer has not accused the school defendants of demoting him in retaliation against Salupo's speech. Nor has he asserted a First Amendment interest in Salupo's speech. Rather, Linkmeyer's communications—not Salupo's—are the object of the School Defendants' alleged retaliation and Linkmeyer's asserted First Amendment interest, and the Complaint does not allege that any of Linkmeyer's communications included a discussion about the safety of his school or whether he posed a threat to his pupils. Indeed, according to Linkmeyer, his effect on the school's safety was not in issue by the time he uttered any of the speech at question here: The School Defendants dismissed Salupo's allegations sometime in September of 2011, and his speech, commencing in October, addressed only the collection of information necessary to sue Salupo, Duffey, Wiggins, and Community.

Linkmeyer may be correct in asserting that a defamation lawsuit would have made his effect on the school's safety a matter of "public knowledge, discourse, and debate." But the question before the Court is not whether the First Amendment would protect the contents of a hypothetical lawsuit; rather, the Court must determine whether the First Amendment protects the words Linkmeyer actually wrote and spoke, and he indicates that none of those words addressed the issue of school safety.

Any relationship between the publicly interesting issue of school safety and the speech Linkmeyer raises as protected is tangential at best, and, in the Seventh Circuit, a tangential relationship to a subject generally interesting to the public does not entitle speech to First Amendment protection. *E.g.*, *Gross* 619 F.3d at 706; *Campbell*, 99 F.3d at 827; *Colburn*, 973 F.2d at 587, 588. To receive the protection of the Free Speech Clause, Linkmeyer must have

9

demonstrated some intent to draw attention to a public issue.  *Compare Gross*, 619 F.3d at 706, *and Colburn*, 973 F.2d at 587, 588, *to Campbell*, 99 F.3d at 828 (finding that plaintiff addressed a matter of public concern because he advocated changing a government program knowing his advocacy would imperil his employment).  Linkmeyer's Complaint demonstrates that he sought only to gather the information he needed to sue Salupo, Duffey, Wiggins, and Community.  This is the epitome of posturing in a private personnel dispute, and the First Amendment does not protect such efforts.  *Campbell*, 99 F.3d at 827; *see also Colburn*, 973 F.2d at 587, 588.

### c. The facts Linkmeyer has alleged do not satisfy his burden under Federal Rules of Civil Procedure 8 and 12.

The Court also must reject Linkmeyer's argument that the facts he has alleged satisfy Rule 8's notice pleading standard and entitle him to further develop his cause of action through discovery.  According to Linkmeyer, Rule 8 only requires plaintiffs to give defendants notice of the causes of action they intend to pursue, and he has carried that burden.  To assert more specific facts in his Complaint, says Linkmeyer, would be both unnecessary (because of the lenient notice pleading standard) and impossible (because, obviously, no discovery had commenced when he filed the Complaint).

The Court cannot reconcile Linkmeyer's construction of Rule 8 with the binding precedents requiring him to allege facts that, if proven true, would constitute a plausible claim for relief.  *See Agnew*, 638 F.3d at 334.  A plaintiff cannot satisfy Rule 8 by simply naming his cause of action.  He also must state the facts he believes will entitle him to relief on that cause of action.  *Id.*  Linkmeyer's citation to *Scott Aviation, Inc. v. DuPage Airport Authority*, 393 F. Supp.2d 638 (N.D. Ill. 2005), is unavailing, as that case was decided prior to *Twombly* and therefore applied a different pleading standard.

Nor does a plaintiff satisfy Rule 8 by asserting the result he intends to prove, *see id.*, like Linkmeyer's allegation that he spoke as a private citizen on a matter of public concern. Such a statement articulates the legal conclusion the Court must reach if Linkmeyer is to prevail. *See Gross*, 619 F.3d at 704). To survive a motion to dismiss, a plaintiff must articulate facts that, if proven true, would plausibly support such a conclusion. *See Agnew*, 683 F.3d at 334. For the reasons explained above, the facts Linkmeyer has articulated fall short of plausibly supporting the conclusion that his speech addressed a matter of public concern.

Linkmeyer's argument that dismissal of Count I is premature until some discovery has been allowed is similarly unavailing. Linkmeyer has identified voluminous facts not found in the Complaint—for example, the motivation behind Linkmeyer's speech; exact quotes of his conversations with Raimondi, Browning and Fohrer; and the full text of his e-mail to Renbarger and Smith. By arguing that discovery must be allowed to place these facts before the Court, Linkmeyer misapprehends his pleading burden.

Although Rule 8 does not require Linkmeyer to submit evidence proving his claims, it does require him to state factual allegations that—if proven with evidence obtained through discovery—would plausibly entitle him to relief. *Agnew*, 683 F.3d at 334. This standard contemplates that a plaintiff has not conducted discovery and cannot have all the evidence at his disposal when he drafts his complaint; accordingly, his job is not to prove his claims, but to allege the facts he intends to uncover in discovery and use to prove his claims at trial. Linkmeyer has failed to include such allegations, and discovery would not improve his ability to do so. Moreover, in this case the issue is what Linkmeyer's own speech was, something that Linkmeyer possesses unrivaled knowledge of without the need for discovery.

Linkmeyer's speech—construed favorably and from his own descriptions—amounts only to a series of private discussions about a prospective lawsuit and requests for information that would support it. At bottom, Linkmeyer's speech was scarcely different from the quests for personal relief found unprotected in *Gross* and *Colburn*. If true, the facts Linkmeyer has alleged would make his interest in litigation understandable. That he "may have been treated unfairly, however, does not compel a finding that [his] statements were of public concern." *Colburn,* 973 F.2d at 588. Linkmeyer has not alleged facts sufficient to plausibly support a conclusion that the speech he claims was protected addressed any matter of public concern, and the Court therefore must dismiss Count I of his Complaint.

### B.  Petition Clause

Count II of Linkmeyer's Complaint mirrors Count I but alleges that the First Amendment protected his communications as a petition for a redress of grievances rather than free speech. Like the Free Speech Clause, the Petition Clause protects only speech that addresses matters of public concern. *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2497, 2500–2501 (2011) ("Employees should not be able to evade the rule articulated in the *Connick* case by wrapping their speech in the mantle of the Petition Clause). *See also, e.g.*, *Belk v. Town of Minocqua*, 858 F.2d 1258, 1261–62 (7th Cir. 1988).

Linkmeyer has not proffered any authority suggesting that the "matter of public concern" standard should not apply (or that it should apply differently) to his redress-of-grievances claim. More critically, Linkmeyer offers no facts to support Count II that were not considered on Count I. Applying the same legal standard to the same facts, the Court must reach the same result: Linkmeyer has not alleged facts sufficient to support a plausible conclusion that his communications addressed any matter of public concern. Consequently, Linkmeyer has not

articulated a plausible claim that the School Defendants retaliated against communications protected by the Petitions Clause, and the Court therefore must dismiss Count II of his Complaint.

### IV.    CONCLUSION

For the reasons set forth above, the School Defendants' Motion to Dismiss is **GRANTED** as to Counts I and II of Linkmeyer's Complaint.  At this time, Count III of Linkmeyer's Complaint, which is asserted only against Defendants Stacy Salupo and Community Health Network, Inc., remains.  Because Counts I and II are dismissed for failure to allege sufficient facts, Linkmeyer is entitled to replead those claims.  *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim") (quotation marks and citation omitted).  If Linkmeyer believes he can assert additional facts that would adequately support these claims, he shall file a motion to amend his complaint by **January 6, 2014.**  If Linkmeyer chooses not to do so, or if his amendment is unsuccessful, the Court will dismiss Counts I and II with prejudice and will dismiss Count III without prejudice inasmuch as it asserts a state law claim between non-diverse parties.

SO ORDERED:   12/20/2013

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification